(No. 49873)

FRANK VOLOVICH, Appellee, v. THE INDUSTRIAL COMMISSION *et al.*—(The Metropolitan Sanitary District of Greater Chicago, Appellant.)

*Opinion filed Oct. 6, 1978.—Rehearing denied Dec. 1, 1978.*

Allen S. Lavin, of Chicago (Andrew A. Farenga, Paul D. Lindauer, Jr., and James B. Murray, of counsel), for appellant.

Murges & Bowman, of Chicago (George J. Murges and John T. Bowman, of counsel), for appellee.

MR. JUSTICE CLARK delivered the opinion of the court:

This is an appeal as of right pursuant to Supreme Court Rule 302(a) (58 Ill. 2d R. 302(a)) from a decision of the circuit court of Cook County, which set aside the decision of the Industrial Commission in this cause on the ground that the Industrial Commission's decision was against the manifest weight of the evidence. We disagree, and accordingly we reverse the judgment of the circuit court and reinstate the decision of the Industrial Commission, which denied relief to the petitioner.

On October 16, 1969, Frank Volovich, the petitioner, was employed as a maintenance worker by the respondent, the Metropolitan Sanitary District of Greater Chicago. That morning, he was mopping a floor in one of the District's facilities when he allegedly slipped on the wet floor and, as he fell, struck his lower back against a table before striking the floor with his neck, lower back and left arm. There were no other witnesses to the occurrence. Petitioner claimed that following this incident he was "semiconscious" for several minutes, after which he got up from the floor and walked the 75 or 100 feet to the office of the facility's chief engineer, William Walsh. At the hearing before the arbitrator, Walsh testified that all Volovich said at that time was that he was sick. Volovich,

on the other hand, testified that he told Walsh that he had had an accident and had fallen.

Walsh notified Volovich's foreman, Casimir Blaszynski, who testified that Volovich told him that he had had a fainting or dizzy spell, and that "he was getting no chest pains, like a shoulder pain in his left arm." Blaszynski's credibility later was seriously impeached. On cross-examination Blaszynski denied having discussed the case with anyone, including Walsh. That statement was contradicted by Walsh's admission that he had discussed the case with Blaszynski on their way to the hearing.

The next day, Volovich went to see his family physician, Dr. Alphonse Gnilka. Dr. Gnilka had no independent recollection of having seen and treated petitioner on that date, but his written records of treatment were admitted into evidence over petitioner's objection (in support of which petitioner has cited no authority). Those notes for October 17, 1969, read, "While working everything went numb and patient did faint," and for a subsequent visit on November 4, 1969, the notes read, "pain in left side *** muscle strain left middle back." On October 22, 1969, petitioner returned to work, at which time he signed a report which Blasznyski prepared, describing the reason for his absence as "dizzy spell and nervous condition." Petitioner subsequently resigned his position with the District on December 19, 1969.

On January 6, 1970, petitioner filed his claim in the instant cause. Shortly thereafter, on February 19, 1970, he was admitted to the Central Community Hospital for treatment of back problems which he claims were causally connected with the events of October 16. However, on his admission to the hospital, Volovich denied on an insurance form that his back problem related to an injury occurring in the course of employment. Petitioner's explanation of this statement is that he was less than truthful in filling out

the form because he would not have been admitted to the hospital for treatment of an injury occurring in the course of his employment.

Other incidents also tend to undercut petitioner's current theory of his disability. On February 23, 1970, Volovich was interviewed by Dr. W. Malhas, whose report indicated that Volovich denied "any history of recent trauma or any other known illness." On April 21, 1970, Volovich denied having any physical handicap or disability when he applied for employment with the Chicago Housing Authority. Here, too, he submits that he lied in order to get the job. Volovich was successful in obtaining that job, but on June 3, 1970, his back was injured while working there, for which he received compensation in the amount of $13,500.

Nor does the medical testimony completely support petitioner's position. The petitioner's expert witness, Dr. Irwin Barnett, told the arbitrator that the first accident might or could have contributed to the petitioner's present disability. However, on cross-examination, Dr. Barnett admitted that, though it would be highly unusual, it also was possible that the second injury accounted entirely for petitioner's present disability. Respondent's expert, Dr. Clarence Zurfli, testified that, in his opinion, there was no causal connection between the first alleged injury and petitioner's current disability. He further testified that X rays taken in February, prior to the second accident, indicated only normal degeneration, though he admitted that it is possible that the degeneration could have been aggravated by trauma. Another witness, Dr. Robert Busch, testified that X rays taken of petitioner following the second accident indicated certain osteopathic spurring of the L-5 vertebra and slippage leading to a narrowing of the disc space between the L-4 and L-5 vertebrae, as well as other changes in the L-1 and L-2 vertebrae. In response to a question as to whether the spurring described may be

due to trauma, Dr. Busch testified "it may be accentuated or it may be increased, it may increase the spurring and it also may be due to various other things." He did indicate, however, that these changes in the vertebrae definitely antedated the second accident and indeed could have occurred as early as the first accident.

The arbitrator found in favor of the petitioner, but the Industrial Commission, after hearing additional evidence regarding petitioner's other claims for compensation in both related and unrelated incidents (none of which impeached his credibility), found in favor of the respondent. Although the decision of the arbitrator is a factor which may be considered in determining whether the Industrial Commission's decision was against the manifest weight of the evidence, on this record we cannot say that the Industrial Commission's decision was against the manifest weight of the evidence.

The record reflects substantial inconsistencies between petitioner's testimony before the arbitrator and his prior statements and conduct. These inconsistencies seriously impeach his credibility, despite his plausible explanations of them. The weight to be accorded the demeanor evidence available only to the arbitrator did not, in our opinion, require the Industrial Commission to accept the arbitrator's evaluation of petitioner's credibility. Thus, on this record, even though the evidence strongly suggests that petitioner was suffering a disability, the Commission could have found that petitioner's disability was not causally connected with his employment by respondent, and such a finding would not have been against the manifest weight of the evidence. The circuit court therefore erred in setting aside the Commission's decision. *Moore v. Industrial Com.* (1975), 60 Ill. 2d 197, 203.

For the foregoing reasons, the judgment of the circuit court is reversed.

*Judgment reversed.*